# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO.: 1:23-CR-00063** |
| Plaintiff, | : | |
| | : | **JUDGE MCFARLAND** |
| v. | : | |
| | : | **SENTENCING MEMORANDUM** |
| | : | **OF THE UNITED STATES** |
| **FARHAN JAMI,** | : | |
| | : | |
| Defendant. | : | |

The defendant, Farhan Jami, possessed an illegal, unregistered incendiary device. The government recommends a sentence of 46 months, followed by three years of supervised release, and the $100 mandatory special assessment. The recommended sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote just punishment, and afford adequate deterrence.

## BACKGROUND

The case against Jami stems from an investigation into an individual who constructed an incendiary device, placed it on top of a vehicle's hood, and ignited the device. The fire destroyed a vehicle and damaged the side of a house. The house was occupied at the time of the fire.

Officers obtained home security footage which captured the act on camera. When law enforcement canvassed the area, they located on a nearby street a lone individual, identified as Farhan Jami (hereafter "Jami"), in the driver's seat of a rental vehicle. (PSR, ¶ 26) Upon initial questioning, Jami stated that he was visiting

a friend in the area. (*Id.*) Approximately 15 feet away from Jami's vehicle, investigators located two plastic bags that contained "reddish-brown powder, […] latex gloves, a ball cap, a face mask, sparklers, […and] terracotta pot fragments." (*Id.* at ¶ 27). In a subsequent interview, Jami "admitted to purchasing the thermite while in New York" and indicated his knowledge of the intended victim, a popular video game streamer. (*Id.* at ¶ 30).

On June 28, 2023, a single-count Indictment was returned against Jami charging him with Malicious Destruction by Fire and Attempt. (PSR, ¶ 1). On October 4, 2023, Jami pled guilty to Possession of an Unregistered Firearm—Destructive Device in Count 1 of the Superseding Information. (*Id.* at ¶ 3). There are no outstanding objections to the PSR, and the matter is scheduled for sentencing on March 12, 2024.

## **LEGAL STANDARD**

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Then, the Court is required to consider the sentencing factors outlined in 18 U.S.C. § 3553(a). These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--

>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) . . . the sentencing range established . . . [by the Guidelines];
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the day of sentencing[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court should impose a sentence sufficient but not greater than necessary to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

## ARGUMENT

### A. Sentencing Guidelines Calculation

The United States agrees with the Guidelines range calculated in the PSR, which gives a Guidelines imprisonment range of 37 - 46 months, based on a total offense level 21 and criminal history category I.

The PSR assigns a base offense level of 18 under U.S.S.G. § 2K2.1(a)(5) because the firearm meets the definition provided under 26 U.S.C. § 5845(a). (PSR, ¶ 47). The PSR correctly applies a two-level increase in offense level under U.S.S.G. § 2K2.1(b)(3)(B) because the offense involved an incendiary device, which meets the definition of a dangerous weapon, firearm, or destructive device as described in 26 U.S.C. § 5845(a). (*Id.* at ¶ 50). The PSR correctly applies a four-level increase in offense level under U.S.S.G. § 2K2.1(b)(6)(B) because Jami used or possessed the firearm in connection with another felony offense. (*Id.* at ¶ 51). Therefore, Jami's adjusted offense level is 24. (*Id.* at ¶ 56). He receives a three-point reduction for acceptance of responsibility, resulting in a total offense level of 21. (*Id.* at ¶¶ 57-61). Jami receives one criminal history point placing him in criminal history category I. (*Id.* at ¶ 68.) The resulting Guidelines imprisonment range is 37 to 46 months. (*Id.* at ¶ 104.)

### B. Analysis of the 18 U.S.C. § 3553(a) Factors

The government's recommended sentence of 46 months–a sentence that is at the highest end of Jami's Guidelines range – is sufficient but not greater than necessary and is supported by the 18 U.S.C. § 3553(a) factors.

***The nature and circumstances of the offense***. The nature and circumstances of the instant offense support the government's recommended sentence.

4

Jami took a 2-hour flight to light a woman's car on fire. Jami acted with premeditation, bringing thermite and sparklers with him on the plane, risking the lives of everyone aboard. Such was his determination to carry out his plan.

When Jami reached the victim's address late at night, Jami saw her vehicle in the driveway next to her house. Another vehicle belonging to the victim's family was parked right behind her own. Given the presence of multiple vehicles at a home late at night, Jami full well knew the high risk that people would be inside the home during the fire. And yet, Jami still constructed the incendiary device and ignited it on a car hood within feet of the home. Such was Jami's determination to carry out his plan.

Once Jami started the fire, Jami fled the scene. Jami did not have a change of heart nor did he care about the immediate danger posed to others. Jami did not call the fire department nor did he alert the occupants of the house. Instead, Jami stayed close by so he could witness the devastation he caused first-hand. Such was Jami's determination to carry out his plan.

When law enforcement arrived and canvassed the area, they located Jami sitting alone in a parked rental vehicle. The clothing that he wore to hide himself from identification, thermite powder, and a lighter were located nearby. Jami lied about his involvement to the officers at the scene. Jami lied about his involvement to the officers at the police station. In a recorded jail call after his arrest, Jami discussed his plan to leave the state in the hope that he would not be pursued to New York: "what I need to do, bro, I need to violate that state thing." Even after pleading guilty,

5

Jami through his attorney blamed the victim for Jami's actions, going so far as to mischaracterize the victim as targeting Jami as part of a "money scam." https://www.wcpo.com/news/local-news/butler-county/monroe/man-who-tried-to-bomb-car-in-monroe-was-jilted-by-woman-he-met-on-internet-attorney-says (last checked March 5, 2024). Such victim-blaming is as factually wrong as it is abhorrent, and it has remained online, uncorrected, since November 2023.

Jami never met the woman who was the target of his crime. Jami ever only had cursory interactions with her online. The last interaction Jami and the victim ever had was apparently five months before Jami's crime, making his urgency in committing the offense all the more baffling. Jami was so intent on risking the life and safety of the intended victim and her property that he was willing to risk missing a family member's wedding if he was caught. Such was Jami's determination to carry out his plan. The nature and circumstances of Jami's conduct are egregious and merit a significant term of imprisonment.

***History and characteristics of the defendant***. Jami's history and characteristics further support the recommended sentence. Jami has minimal criminal history and may benefit from mental health treatment or anger management while on supervised release. The government's recommended sentence, which will allow for treatment while on supervised release, is supported by Jami's history.

***The need for the sentence imposed***. The government's recommended sentence will also serve the need for the sentence imposed. During this case, Jami

was granted a bond while under pretrial supervision in New York. Jami has complied with his bond conditions. The 46 months the government has recommended promotes respect for the law and reflects the seriousness of Jami's conduct and the impact of Jami's crime not only on the intended victim but on the victim's family as well. The conduct underlying Jami's offense of conviction is arson which could have resulted in multiple casualties. Jami's lack of remorse and victim-blaming suggest a continued danger to the public. The recommended 46 month term of imprisonment recognizes the emotional, mental, and financial damage to the victims and serves as a necessary deterrent to others who would think like Jami that online anger or disillusionment can justify offline crime.

*Guidelines, unwarranted sentencing disparities, and policy statements*. The recommended 46 month sentence is at the highest end of the applicable Guidelines range. Further, the government's recommended sentence will not result in unwarranted sentencing disparities. Finally, the government has not identified any pertinent policy statements that would counsel against a term of imprisonment in this case.

.

.

.

.

.

## CONCLUSION

For the foregoing reasons, the United States asks the Court to sentence Jami to a sentence of 46 months imprisonment, followed by three years of supervised release, and a mandatory $100 special assessment.

Respectfully Submitted,

KENNETH L. PARKER
UNITED STATES ATTORNEY


*/s/Ryan A. Keefe*
RYAN A. KEEFE (MA 687613)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Phone: (513) 684-3711
Fax: (513) 684-6385
Ryan.keefe@usdoj.gov

**CERTFICATE OF SERVICE**

 I hereby certify that a copy of the foregoing was electronically filed via the Court's CM/ECF system tis 5th day of March, 2024 and has been served upon all counsel of record.

              */s/ Ryan A. Keefe*
              RYAN A. KEEFE (MA 687613)
              Assistant United States Attorney